T.C. Memo. 2004-199


UNITED STATES TAX COURT


VANESSA K. BERNARDO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16655-02.                    Filed August 31, 2004.


During 1999, P and her daughter, M, formed an unincorporated venture, V, as the vehicle for pursuing M's career as a singer and recording artist. P provided the financing for the venture. P and M orally agreed to a 50-50 division of any profits. P believed that, under that agreement, her profit participation would terminate when she had received sufficient profit distributions to fully reimburse her for all expenditures on behalf of V. R alleges that P did not participate in the activities of V for profit. Therefore, pursuant to sec. 183, I.R.C., R denies that P is entitled to deduct any of her 1999 expenditures on behalf of V. R also alleges that P is not entitled to deduct her 1999 expenditures for (1) clothing that her employer required her to wear for work or (2) tax preparation fees that she failed to substantiate. R also denies that P is entitled to either a dependency exemption for M or head of household filing status for 1999. R also determined that P is subject to the sec. 6662, I.R.C., accuracy-related penalty.

1. <u>Held</u>:  R's denial of deductions is sustained.

2. <u>Held</u>, <u>further</u>, R's denial of a dependency exemption for M and of head of household filing status is sustained.

3. <u>Held</u>, <u>further</u>, R's penalty against P is sustained, in part, under sec. 6662, I.R.C.


<u>Vanessa K. Bernardo</u>, pro se.

<u>Michele A. Yates</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, <u>Judge</u>:  By notice of deficiency dated October 7, 2002, respondent determined a deficiency in petitioner's 1999 Federal income tax of $4,616 and an accuracy- related penalty of $923.  By the petition, petitioner (1) assigned error to respondent's determinations of a deficiency and a penalty and (2) claimed an overpayment in tax of $3,498.  After concessions,[1] the issues for decision are (1) whether petitioner is entitled to a

---

[1] The parties stipulated that, during the audit of her 1999 return, petitioner conceded the disallowance of a $9,172 deduction for business use of her home that had been claimed on that return.  Petitioner reaffirmed that concession at the beginning of the trial when, in response to the Court's inquiry as to whether petitioner agreed with respondent's counsel's description of the remaining issues in the case (which included counsel's statement that the $9,172 home office deduction "has been conceded by petitioner"), she replied:  "Yes I do, your Honor."  Therefore, we treat that deduction disallowance as conceded and reject petitioner's attempt, on brief, to resurrect the issue on the alleged ground that her concession was contingent on an overall settlement of the case prior to trial.

Schedule C, Profit or Loss From Business, deduction of $11,444 for the loss associated with an unincorporated venture variously referred to as Escrow Inc. or Cool G Records (Cool G Records), or whether that loss is nondeductible because it was incurred in an activity not engaged in for profit within the meaning of section 183(a), (2) whether petitioner is entitled to deductions totaling $10,338, which consist of $9,721 in unreimbursed employee business expenses and $617 in tax preparation fees taken on Schedule A, Itemized Deductions, (3) whether petitioner is entitled to a deduction for a dependency exemption for her daughter Melissa O'Donnell (Melissa), (4) whether petitioner is entitled to head of household filing status, and (5) whether petitioner is liable for the accuracy-related penalty under section 6662(a).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1999, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts have been rounded to the nearest dollar.

                          FINDINGS OF FACT

Some facts are stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference. The facts relating to petitioner's entitlement to (1) a deduction for a dependency exemption for Melissa and (2)

head of household filing status are encompassed in the findings of fact relating to petitioner's Schedule C deductions. Certain facts relating to respondent's imposition of the section 6662(a) penalty are included in the discussion of that issue.

At the time the petition was filed, petitioner resided in Mechanicsburg, Pennsylvania.

Petitioner's Schedule C Activity: Cool G Records

During 1999, petitioner and Melissa were involved in efforts to further Melissa's career as a composer of songs, a performer (singing her own material) in clubs, a recording artist, and, through Cool G Records, a producer of her own recorded performances.

Melissa was born on December 8, 1979. Her desire to be a performer manifested itself at an early age. She took dancing lessons, paid for by petitioner, starting at the age of 8. As a child, Melissa also learned to play the clarinet and violin, both with petitioner's financial support. Melissa persuaded petitioner to permit her to transfer from her local high school in Orange County, California, to the Los Angeles High School for the Performing Arts, despite the long, daily commute that that would entail. While still in high school, Melissa briefly studied music and drama at California State - LA.

Melissa graduated from the Los Angeles High School for the Performing Arts in 1997. During 1998, she attended the FIT

School of Dance in New York City. During 1999, she took screenwriting, acting, and modeling classes at Santa Monica College, and she also studied acting at the Ivana Chubbek Studios For Acting.

Petitioner and Melissa began Cool G Records in 1999. During 1999, Melissa composed music, performed her music in Los Angeles area clubs, and distributed publicity materials (including her sheet music) at the clubs where she performed as a singer. Melissa did not receive compensation for those performances, as the goal was to build her reputation as a singer and composer, and to do that she needed exposure. She also made contacts with people (e.g., record company executives) who were in a position to further her career as a performer and recording artist. Since 1999, she has made a CD and has been featured on a television show, which appeared repeatedly over a 3-month period on the music television channel VH1. The show portrayed Melissa's efforts to become a rock star. Melissa's goal is to become "big enough on my own" to be able to use Cool G Records (since 1999, renamed Worldwide Records) to produce her recordings, and not "have to go to anyone else anymore."

Petitioner's role in furthering Melissa's music career and, with it, Cool G Records has always been to provide financial support for Melissa's activities. Melissa has had sole responsibility for making the necessary music industry contacts,

a role that petitioner was unable to fulfill, not only because of her lack of experience in the music industry, but also because she held a full-time job throughout 1999: until November 14, as store manager and district training coordinator at Mervyn's Department Store (Mervyn's) in Hayward, California, and, thereafter, as store manager at a GAP store (the GAP) in Beverly Hills, California.[2]

At the time of the trial, petitioner had contributed approximately $35,000 toward furthering Melissa's career, financed, in part, by a $24,000 distribution from her section 401(k) retirement plan.

Since the inception of Cool G Records and the start of Melissa's efforts to build a reputation as a singer and composer, both of which occurred in 1999, Melissa has not been compensated for any of her live or recorded performances.

From the time it became clear that Melissa intended to pursue a professional career in show business, i.e., from the time Melissa began attending the Los Angeles High School for the Performing Arts, petitioner and Melissa have had an oral agreement or understanding that any reimbursement to petitioner of moneys invested in Melissa's career would be realized solely

---

[2] During 1999, petitioner earned gross wages of $78,558 from Mervyn's and $6,669 from the GAP.

from the profits,[3] if any, that might arise, and that any such profits would be shared by petitioner and Melissa on a 50-50 basis. However, during 1999 and prior thereto, petitioner and Melissa did not have a mutual understanding as to whether petitioner's monetary interest would continue after she had been fully reimbursed for her expenditures in furtherance of Melissa's career or would terminate at that point, in which case Melissa would have the right to all future profits from the enterprise (Cool G Records).

The Schedule C included in petitioner's 1999 amended return submitted to respondent on April 26, 2002 (the 1999 amended return), reported zero gross receipts for Cool G Records and expenses totaling $11,444, for a net loss of $11,444. During the audit, petitioner substantiated $3,354 in advertising expenses, $1,492 in car and truck expenses, and $3,840[4] for rental of

---

[3] It is not clear what petitioner and Melissa mean by the term "profits". Based upon their testimony, however, we interpret their usage of that term to mean annual profit rather than overall enterprise profit (i.e., annual profit rather than receipts in excess of cumulative expenditures since the inception of the enterprise.)

[4] The parties stipulated that the $3,840 deduction reported on Schedule C of the amended return represented "office space rented for 6 months in Hollywood at $550.00 a month, for a total of $3,850.00." Six months of rent at $550 per month totals $3,300, not $3,850. We assume that the reference in the stipulation to 6 months and the Schedule C inclusion of a $3,840 rental expense are both in error, and we find that (1) the rental was for 7 months at $550 per month and (2) the total rental expense was $3,850.

office space. That space, located in Hollywood, California (the Hollywood premises), was used by Melissa as living space during periods when she was unable to return to reside with petitioner in Irvine. Prior to the trial in this case, petitioner did not substantiate the balance of the expenses listed on Schedule C, which consisted of $1,336 of depreciation expense and $1,422 of "increased office expense."

Petitioner's Schedule A Deductions

(1) Clothing Expense: $9,721

During 1999, in her position as a district manager for Mervyn's, petitioner was required by her employer to wear black or white dresses or suits (the latter to consist of either pants or a skirt with matching jacket) while on the job. There was no need to go to "specialized" stores for the required clothing, and there was no company logo on the clothing. Because petitioner did not own black or white dresses and suits, she was required to purchase a new wardrobe, and the cost, in 1999, was $9,721.[5]

---

[5] On brief, petitioner argues, for the first time, that the $9,721 in unreimbursed employee business expenses consists of $8,490 of "vehicle expense", $350 of "parking fees, tolls and transportation", $450 of "travel expenses", and only $431 of "clothing costs". At trial, petitioner testified that the entire $9,721 was attributable to "[t]he clothing allowance that was disallowed", and she agreed with the Court's description of the issue of unreimbursed employee business expenses as involving only clothing. There is no evidence in the record to support petitioner's allegation on brief that the $9,721 at issue mostly relates to expenditures other than for clothing that she was required to wear on the job. Therefore, we find that the entire
(continued...)

(2) <u>Tax Preparation Fees: $617</u>

Prior to the trial in this case, petitioner provided no substantiation for the $617 deduction for tax preparation fees on Schedule A of the 1999 amended return.

OPINION

I. <u>Schedule C Deductions</u>

A. <u>Introduction; Burden of Proof</u>

Respondent denies that petitioner is entitled to any Schedule C deductions associated with either Cool G Records or Melissa's efforts to carve out a career in the music industry. Respondent's grounds are that (1) petitioner's expenditures were not part of an activity engaged in, by petitioner, for profit and (2) with regard to certain of those expenditures, there was no substantiation. At trial, respondent's case-in-chief was relatively brief. Respondent relies primarily on petitioner's inability to show entitlement to the Schedule C deductions.

In pertinent part, Rule 142(a)(1) provides the general rule that "[t]he burden of proof shall be upon the petitioner". In certain circumstances, however, if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the proper tax liability, section 7491 places the burden of proof on the Commissioner. Sec. 7491(a)(1); Rule

---

[5](...continued)
$9,721 deduction for unreimbursed employee business expenses relates to petitioner's expenditures for that clothing.

142(a)(2).  Credible evidence is "the quality of evidence which, after critical analysis, * * * [a] court would find sufficient * * * to base a decision on the issue if no contrary evidence were submitted."[6]  Baker v. Commissioner, 122 T.C. 143, 168 (2004); Higbee v. Commissioner, 116 T.C. 438, 442 (2001).  Section 7491(a)(1) applies only if the taxpayer complies with substantiation requirements, maintains all required records, and cooperates with the Commissioner for witnesses, information, documents, meetings, and interviews.  Sec. 7491(a)(2).

The parties have stipulated that petitioner failed to substantiate two of the five deductions at issue (i.e., additional claimed depreciation and increased office expense).  Moreover, for the reasons stated infra, in section I.B., we find that petitioner has failed to introduce "credible evidence" that any of the expenses deducted on Schedule C of the 1999 amended return were part of an activity engaged in by her for profit, which would have rendered those expenses deductible under section 162.  Therefore, it follows that petitioner bears the burden of proof with respect to her entitlement to those deductions pursuant to Rule 142(a).[7]

_____

[6]  We interpret the quoted language as requiring the taxpayer's evidence pertaining to any factual issue to be evidence the Court would find sufficient upon which to base a decision on the issue in favor of the taxpayer.

[7]  Petitioner's failure to introduce "credible evidence"
(continued...)

B.  Application of Section 183

    1.  Background: Governing Principles

Generally, under section 183(a) and (b), individuals are not allowed deductions attributable to an activity "not engaged in for profit" except to the extent of gross income generated by the activity (in this case, zero).  Section 183(c) defines an activity "not engaged in for profit" as "any activity other than one with respect to which deductions are allowable * * * under section 162 or under paragraph (1) or (2) of section 212." Expenditures incurred in an activity are deductible under sections 162 and 212(1) or (2) if, among other things, the taxpayer establishes that she engaged in that activity with the actual and honest, objective of making an economic profit independent of tax savings, even if that objective was not reasonable.  Hulter v. Commissioner, 91 T.C. 371, 393 (1988); Sec. 1.183-2(a), Income Tax Regs.

In determining whether the requisite profit motive exists, we consider all the pertinent facts and circumstances.  Sec. 1.183-2(b), Income Tax Regs.  The following factors bearing upon

---

[7](...continued)
with respect to a factual issue necessarily means that she cannot sustain her resulting burden of proof with respect to that issue. Therefore, our discussions of those issues (both here, dealing with petitioner's Schedule C deductions and, subsequently, dealing with her other deductions and her claim of head-of-household status) may be viewed as setting forth the basis for our conclusions that petitioner has failed to (1) introduce "credible evidence" and (2) carry her burden of proof.

the existence of a taxpayer's profit objective are identified in section 1.183-2(b), Income Tax Regs.: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits; (8) the financial status of the taxpayer; and (9) any elements of personal pleasure or recreation.

2. Application to Petitioner

Both petitioner and Melissa testified that they entered into an oral agreement to split any profits earned by Cool G Records on a 50-50 basis. Melissa further testified that an agreement with petitioner to divide any profits that Melissa might generate as a performer has been in existence since Melissa was 10 years old.

Petitioner testified that, pursuant to her understanding of the oral agreement, any reimbursement of the approximately $35,000 that she had spent to further Melissa's career to date would be derived solely from her 50 percent share of the profits of Cool G Records. In response to a question from the Court, petitioner testified that, once she had recovered her investment

in Melissa's career, she would not further share in any profits of Melissa's or Cool G Records'. When the Court pressed petitioner as to whether and to what extent, if any, she expected to share in any profits generated by Melissa and Cool G Records once she had been fully reimbursed for her expenses, petitioner stated that that is a matter she "would have to renegotiate with her [Melissa] on", but that "[a]t this time, sir, no, because there wasn't--I didn't have any profit to discuss with her." Petitioner's responses to the Court's questioning concluded with the following exchange:

> THE COURT:  Do you want to explain any further with regard to the questions I have just asked you?
>
> THE WITNESS:  I would just like to say that as far as the--it was a verbal [sic; oral] agreement. It was not a written agreement. We have not had discussions further as far as where my percent of take would end, and that would be something we would have to decide.

The foregoing testimony makes clear that, at the time of the trial and, certainly, during the year in issue, 1999, petitioner had no understanding or expectation that her 50 percent profit share necessarily would continue once she had received profits equaling her expenditures on behalf of Cool G Records. In petitioner's view, once full reimbursement had been achieved, and assuming continued profits, she and Melissa might negotiate and

agree to some level of continued profit participation by petitioner for some period of time. But, as of 1999, there had been no negotiation, and the subject was not one to which petitioner had given much thought. At best, petitioner, in 1999, had a vague notion that she might retain an interest in the profits of Cool G Records after she had been fully reimbursed for her expenditures. But her obvious indifference to that eventuality while continuing to lay out money in support of Melissa's career indicates that her financial support of Melissa was motivated by parental affection rather than by the anticipation of economic profit. Petitioner's support of Melissa, the student and daughter, did not differ in kind from her support of Melissa, the aspiring professional.

Based upon the foregoing, we find that petitioner has failed to provide credible evidence that she made her expenditures on behalf of Cool G Records "with the objective of making a profit", as required by section 183 and by section 1.183-2(a), Income Tax Regs.

Assuming arguendo, however, that there had been a meeting of the minds between petitioner and Melissa in 1999 and, under their arrangement, petitioner would be entitled to a 50-percent profit share for some period of time after she had recovered her expenses, the result would be the same. Petitioner's payment of expenses in furtherance of Melissa's professional music career

does not differ in any significant respect from parental expenditures considered nondeductible in a number of cases before this Court, all of which involved either a parent-child partnership or a parental sponsorship of the child (involving the sharing of gross proceeds or net profits) relating to the child's effort to become a successful professional athlete or performer. See Bush v. Commissioner, T.C. Memo. 2002-33 (daughter pursuing a professional career in ballet), affd. 51 Fed. Appx. 442 (4th Cir. 2002); McCarthy v. Commissioner, T.C. Memo. 2000-135 (son attempting to become professional motocross racer); Demattia v. Commissioner, T.C. Memo. 1998-87 (son attempting to become a professional golfer); Nova v. Commissioner, T.C. Memo. 1993-563 (the same); O'Neill v. Commissioner, T.C. Memo. 1985-92 (son attempting to become a professional tennis player). In each of those cases, we applied the factors listed in section 1.183-2(b), Income Tax Regs., and found the parent taxpayer's expenditures to be in the nature of personal or family expenses the deduction of which is prohibited by section 262(a) or limited by section 183. We find no basis for reaching a different result in this case. Petitioner did not take an active part in helping to further Melissa's career other than to provide financial support. She made no financial analysis, and she and Melissa had no business plan. Most of her time and effort was devoted to her store manager job, first with Mervyn's and later in the year with the

GAP, from which she derived all of her earned income.  She had no music industry expertise, and she had no prior experience in backing aspiring recording artists.  In addition, there is no evidence that there were any significant assets associated with Cool G Records that could appreciate in value.  Lastly, petitioner obviously derived a certain amount of personal pleasure or satisfaction from watching her daughter progress in a highly competitive industry.  Thus, seven of the nine factors listed in section 1.183-2(b), Income Tax Regs., militate against a finding that petitioner's financial support of Melissa and Cool G Records was undertaken for profit, and the other two factors are, at best, neutral (as of 1999, the year in which Cool G Records first became operative, there could be neither "occasional profits" nor a "history of income or losses").

### 3. Conclusion

Petitioner is not entitled to the deductions (loss) claimed on Schedule C of the 1999 amended return.

## II. Schedule A Deductions

### A. Burden of Proof

For the reasons stated infra, in section II.B., we find that petitioner has failed to introduce credible evidence that she is entitled to deduct her expenditures for clothing required to be worn by her on the job by her employer, Mervyn's, and, as discussed infra, in section II.C., we find that she has failed to

substantiate the expenditure of $617 for tax preparation fees. Therefore, petitioner has failed to satisfy the requirements of section 7491(a)(1) and (2)(A). As a result, petitioner retains the burden of proof with respect to her entitlement to both deductions. See Rule 142(a).

B. <u>Unreimbursed Employee Business Expenses: Clothing Expenditures</u>

Petitioner was required by Mervyn's, her employer during the first 10-1/2 months of 1999, to wear either black or white suits or dresses to work.

Generally, the cost of a business wardrobe required as a condition of employment is considered a nondeductible personal expense within the meaning of section 262 if the purchased clothing is suitable for general or personal wear. See, e.g., <u>Hynes v. Commissioner</u>, 74 T.C. 1266, 1290 (1980). Lack of suitability for general or personal wear is one of the three criteria (the other two being that the clothing is required or essential in the taxpayer's employment and that it is not, in fact, used for general or personal wear) established by this Court for treating clothing costs as ordinary and necessary business expenses deductible under section 162. See <u>Yeomans v. Commissioner</u>, 30 T.C. 757, 767-768 (1958). In <u>Yeomans</u>, we treated as deductible the taxpayer's expenditures for items of clothing required by her employer that were "not suited for <u>her</u> private and personal wear, as distinguished from business wear".

Id. at 768 (emphasis supplied). We, thus, applied a subjective test, which examines the suitability of the clothing for private or personal wear by the taxpayer seeking the deduction.

The evidence indicates that the clothing purchased by petitioner was suitable for ordinary street wear by her. Although petitioner testified that she purchased the clothing for work, she never stated (and there is no evidence) that it was unsuitable, in terms of price, quality, or style, for her personal wear. The requirement that her business wardrobe consist of suits or dresses of a particular color (black or white) does not, in and of itself, indicate that the clothes were unsuitable for ordinary street wear by petitioner. See Hynes v. Commissioner, supra at 1269, 1291 (deduction denied for the cost of "regular business clothing * * * limited to colors and patterns which would televise well"). Moreover, there is no testimony or other evidence that she never wore the clothing away from work. Thus, petitioner has failed to provide evidence that she satisfied two of the three criteria for deductibility.[8]

_____

[8] The subjective test applied by this Court in Yeomans v. Commissioner, 30 T.C. 757, 768 (1958) has been specifically rejected by the Court of Appeals for the Fifth Circuit in favor of an objective test, which denies a business expense deduction for the cost of clothing that is "generally accepted for ordinary street wear" (i.e., for ordinary street wear by people generally rather than by the taxpayer specifically). Pevsner v. Commissioner, 628 F.2d 467, 470 (5th Cir. 1980), revg. T.C. Memo. 1979-311, rehg. en banc denied, 636 F.2d 1106 (5th Cir. 1981). Because petitioner fails the subjective test applied by this

(continued...)

We hold that petitioner's clothing expenditures constitute personal expenses nondeductible under section 262(a) rather than unreimbursed employee business expenses deductible under section 162.

C.  Tax Preparation Fees

The parties have stipulated that, prior to trial, petitioner failed to provide substantiation for her Schedule A deduction of $617 for tax preparation fees, and she provided no substantiation during the trial.  She has failed to provide even the minimal substantiation that might permit us to estimate the allowable deduction as permitted under Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  Even under Cohan, there must be sufficient evidence in the record to provide a basis upon which an estimate may be made.  Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  Here, there is none.  That complete absence of substantiation means that (1) petitioner retains the burden of proving her right to deduct any amount for tax preparation fees, see sec. 7491(a)(2)(A); Rule 142(a), and (2) she has failed to sustain that burden.

_____

[8](...continued)
Court, she necessarily fails the objective test applied by the Court of Appeals for the Fifth Circuit in Pevsner, which casts a wider net.  It does not appear that the Court of Appeals for the Third Circuit, to which an appeal of this case would most likely lie, has specifically adopted either test.

On brief, petitioner attempts to shift the blame for lack of substantiation to respondent by arguing that "Respondent merely had to substantiate this item for the record while the Tax Preparer [her former husband and Melissa's father, Ronald O'Donnell] was sitting on the witness stand under Cross Examination by Respondent." But the burden is on petitioner, not respondent, to substantiate petitioner's deductions. See sec. 7491(a)(2)(A); Rule 142(a). Petitioner has not shown that she is entitled to a $617 deduction for tax preparation fees.

III. Dependency Exemption for Melissa

Here, again, because petitioner has failed to introduce credible evidence that she is entitled to a dependency exemption for Melissa, she retains the burden of proof with respect to that issue. See sec. 7491(a)(1); Rule 142(a).

Section 151 allows deductions for personal exemptions. Besides providing exemptions for the taxpayer and, in certain circumstances, the taxpayer's spouse, section 151 provides exemptions for dependents of the taxpayer. See sec. 151(c). Section 152(a) defines the term "dependent", in pertinent part, to include a son or daughter of the taxpayer "over half of whose support, for the calendar year * * * was received from the taxpayer". "Support" includes "food, shelter, clothing, medical and dental care, education, and the like." Sec. 1.152-1(a)(2)(i), Income Tax Regs. Assuming petitioner satisfies the

support requirement for Melissa, she must also show either that Melissa's gross income for 1999 was less than the exemption amount or, because Melissa turned 20 in 1999, that Melissa was a full-time student at an educational institution for portions of at least 5 months during that year. See sec. 151(c)(1), (4)(A); sec. 1.151-3(b) and (c), Income Tax Regs.

Petitioner alleges that she provided over half of Melissa's support during 1999. In support of that assertion, petitioner testified that she paid a monthly rental of $550 for the Hollywood premises so that her daughter could reside near to where she was pursuing her fledgling recording career. We have found that she made seven such monthly rental payments. See supra note 4. Petitioner has failed to show that the monthly rental expenditures represented more than half of Melissa's total support for 1999. Also, there is no evidence in the record that petitioner paid for Melissa's food, clothing, medical, educational, or other personal expenses incurred during 1999, and there is no evidence as to what those costs might have been. Although it is stipulated that petitioner withdrew $24,000 from her pension plan during 1999, there is no evidence as to what portion, if any, of that distribution was used to make support payments, in 1999, on Melissa's behalf. Therefore, petitioner has not persuaded us that she satisfies the support requirement of section 152(a).

Moreover, even if it were established that petitioner furnished more than half of Melissa's support for 1999, petitioner has failed to show that either of the alternative requirements of section 151(c)(1) was satisfied: There is no evidence showing that (1) Melissa did not have income (perhaps from a source other than performing) in excess of the exemption amount ($2,750 for 1999) or, (2) Melissa's attendance at either Santa Monica College or the Ivana Chubbek Studios was sufficient to qualify her as a full-time student as defined in section 1.151-3(b), Income Tax Regs.; and there is no evidence that either of those schools qualified as an "educational institution" as defined in section 1.151-3(c), Income Tax Regs.

Petitioner has not shown that she is entitled to a dependency exemption for Melissa for 1999.

IV.  Head of Household Filing Status

On both her original and amended 1999 returns, petitioner claimed head of household filing status.

Again, due to petitioner's failure to introduce credible evidence that she is entitled to claim head of household filing status, she retains the burden of proof with respect to that issue. See sec. 7491(a)(1); Rule 142(a).

Section 1(b) imposes a special tax rate on an individual filing as head of household. Section 2(b)(1), in pertinent part, defines a "head of household" as an unmarried individual who is

not a surviving spouse and who "maintains as his home a household which constitutes for more than one-half of * * * [the] taxable year the principal place of abode, as a member of such household, of * * * a * * * daughter". Petitioner's eligibility for head of household filing status depends upon whether her home in Irvine, California, was Melissa's principal place of abode, as a member of petitioner's household, for more than one-half of 1999.

Petitioner paid 7 months of rent for the Hollywood premises. That payment, totaling $3,850, was stipulated to be for "office space" and was listed on Schedule C of the 1999 amended return as rent paid for "other business property". Petitioner testified, however, that those premises also served as a place of abode for Melissa so that she would "be able to stay up in Los Angeles during the times that she was not able to return to Irvine."

Section 1.2-2(c)(1), Income Tax Regs., allows for "temporary absences from the household due to special circumstances." That regulation, in pertinent part, provides that "[a] nonpermanent failure to occupy the common abode by reason of * * * education [or] business * * * shall be considered temporary * * * due to special circumstances."

Petitioner's evidence indicates that Melissa occupied the Hollywood premises for up to 7 months during 1999 in order to pursue a singing career in Los Angeles clubs and attend screenwriting, acting and modeling classes. Melissa testified

that she performed at the clubs without compensation in order to make herself and her talent known to club owners and record producers, or, as she put it, "to get my name out there." In that way she hoped eventually to establish herself as a paid performer in the clubs and, ultimately, be in a position to record and release hit records through her own label, Cool G Records.

Melissa's testimony strongly implies that, had she succeeded, in 1999, in obtaining regular, paid work as a performer in Los Angeles area clubs, she would have stayed there indefinitely in order to pursue her career as a recording artist. Therefore, the evidence is inconsistent with petitioner's position that her home in Irvine was Melissa's principal place of abode and that Melissa's trips to Los Angeles and the Hollywood premises were "temporary absences * * * due to special circumstances."[9] Because petitioner has failed to demonstrate that her home in Irvine constituted Melissa's principal place of abode for more than 6 months during 1999, we find that petitioner

---

[9] On brief, petitioner argues that, during 1999, Melissa retained her key to the front door of petitioner's home in Irvine, left her furniture, clothing, and personal records there, and continued to receive her mail there. Those facts are not reflected in the record, but, even if they were, they would be equally consistent with the view that Melissa, having moved to the Los Angeles area, asked her mother to retain her furniture, personal effects, and mail until she was "settled" and financially able to sustain herself in Los Angeles.

is not entitled to claim head of household filing status for that year.  See <u>Zampini v. Commissioner</u>, T.C. Memo. 1991-395.

## V.  Section 6662(a) Penalty

Section 6662(a) provides for a penalty equal to 20 percent of the underpayment in tax attributable to, among other things, negligence or disregard of rules or regulations (without distinction, negligence).  See sec. 6662(b)(1).  The penalty for negligence will not apply to an underpayment in tax to the extent that the taxpayer can show both reasonable cause and that the taxpayer acted in good faith.  See sec. 6664(c)(1).  Negligence "includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return." Sec. 1.6662-3(b)(1), Income Tax Regs.  It "also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly."  <u>Id.</u>

Respondent bears the burden of producing evidence warranting imposition of the section 6662(a) penalty.  See sec. 7491(c).

Although we have found that petitioner is not entitled to a Schedule A deduction for unreimbursed employee business expenses, a deduction for certain substantiated expenditures listed on Schedule C, or head of household filing status, in each case the issue involved close questions of fact.  As a result, we find that those return positions did not constitute negligence within

the meaning of section 6662(b)(1) and section 1.6662-3(b)(1),
Income Tax Regs. See Sherman v. Commissioner, T.C. Memo. 1989-
269. Moreover, even if those return positions are considered
negligent, we find that petitioner qualifies for the reasonable
cause exception provided by section 6664(c)(1).

Both the originally filed 1999 return and the 1999 amended
return were prepared by Ronald O'Donnell, and petitioner relied
on Mr. O'Donnell to defend those returns on audit. Petitioner
did not introduce evidence that Mr. O'Donnell qualifies as a tax
expert although Mr. O'Donnell's testimony indicates that he has
had experience in preparing tax returns and defending them on
audit. Conversely, respondent failed to discredit Mr. O'Donnell
as a tax expert. Although the evidence bearing upon Mr.
O'Donnell's tax expertise is slight, we conclude that a
preponderance of that evidence favors petitioner. Therefore, we
find that Mr. O'Donnell was, at the very least, a knowledgeable
tax return preparer, and that petitioner acted reasonably in
relying upon his approval of the Schedule A deduction for
unreimbursed employee business expenses, the substantiated
Schedule C deductions, and head of household filing status for
petitioner. See Ballard v. Commissioner, T.C. Memo. 1996-68. It
is stipulated, however, that petitioner failed to substantiate to
any degree either the $617 Schedule A deduction for tax
preparation fees or $1,422 of office expense and $1,336 of

depreciation expense deducted on Schedule C.  Petitioner also failed to provide substantiation that she was entitled to claim a dependency exemption for Melissa.   Therefore, we sustain the negligence penalty with respect to the underpayment attributable to respondent's denial of those deductions.  See <u>Higbee v. Commissioner</u>, 116 T.C. at 449; see also <u>Perrah v. Commissioner</u>, T.C. Memo. 2002-283.

<u>Decision will be entered under Rule 155</u>.